NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MATTHEWS INTERNATIONAL CORPORATION,**
*Appellant*

**v.**

**VANDOR CORPORATION,**
*Appellee*

---

2017-1889

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2016-00112.

---

Decided: March 27, 2018

---

ROBERT WILLIAM MORRIS, Eckert Seamans Cherin & Mellott, LLC, White Plains, NY, argued for appellant. Also represented by OJEIKU CHRISTOPHER AISIKU; KEVIN P. ALLEN, Pittsburgh, PA.

HAROLD C. MOORE, Maginot, Moore & Beck LLP, Indianapolis, IN, argued for appellee. Also represented by DANIEL J. GREENHALGH, MICHAEL A. SWIFT.

---

Before DYK, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

Matthews International Corporation (Matthews) appeals the final written decision of the Patent Trial and Appeal Board (Board) in IPR2016-00112. In that proceeding, the Board determined that Matthews, the petitioner, had failed to demonstrate by a preponderance of the evidence that claims 1–14 of U.S. Patent No. 8,104,151 (the '151 Patent) were unpatentable. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(4)(A). Although the Board applied an overly broad understanding of the claim term "casket," substantial evidence supports the Board's finding that Matthews failed to show how the prior art teaches that limitation. For that reason, we affirm.

## DISCUSSION

The '151 Patent claims are directed to "a casket arrangement" made of pliable material, such as cardboard, for example. The side and end panels of the casket can be folded in such a way to allow the casket to be reconfigured in a more flattened, compact arrangement, for ease of shipping and storage. As proof that such dual configuration containers as recited in claim 1 already existed at the time of the invention, Matthews relied on U.S. Patent No. 5,050,766 (Groh), which discloses a collapsible cardboard ice chest, and U.S. Patent No. 3,346,399 (Watson), which discloses a collapsible cardboard frozen dough package.

However, claim 1 also recites the limitation "wherein the bottom panel, the side panels and the end panels form a casket body." Rather than argue that it would have been obvious to modify existing cardboard cremation caskets to include the known folding properties disclosed in Groh or Watson, Matthews argued before the Board that the "casket body" limitation was merely "an intended

use" and should receive no patentable weight. J.A. 58. The Board disagreed, concluding that the structural term "casket body" was entitled to patentable weight. J.A. 22–23. The Board noted that the '151 Patent specification describes "casket body 11" as "form[ing] a container for receiving the remains of the deceased." '151 Patent col. 3 ll. 42–43. The Board thus construed "casket body" as "an arrangement capable of receiving or containing the remains of a deceased." J.A. 27. In its institution decision, the Board limited the term "deceased" to "deceased humans," but in its final written decision, the Board credited the Petitioner's submitted evidence of pet caskets, and thus broadened the term "deceased" to include animals. Despite using that broader construction, the Board found that Matthews never provided any evidence or reasoning for why either Groh or Watson's container satisfied the casket body limitation.

On appeal, Matthews reiterates its argument that "casket body" is purely an intended use and thus should be accorded no patentable weight. We disagree. "Casket body" is a structural term in the body of the claim that further defines and limits the scope of the claimed invention. That structural terms are sometimes defined—through claim construction—by the functions they are designed to perform does not somehow convert those structural terms into "an intended use" stripped of any patentable weight. Based on the disclosure of the '151 Patent that the casket body "forms a container for receiving the remains of the deceased," we agree with the Board that "an arrangement capable of receiving or containing the remains of a deceased"[1] is the broadest reasonable interpretation of "casket body."

---

[1] We note that neither party, whether before the Board or this court, raised the issue of how the words "the remains of" should be understood, i.e., whether remains

However, we do not agree with the Board that the term "deceased" includes animals or other non-human bodies. The '151 Patent specification repeatedly uses the noun "deceased" to refer to the contents of the casket. *See* '151 Patent col. 1 ll. 43, 47, 55; col. 3 ll. 43, 50, 52, 60; col. 5 ll. 10–12; col. 6 l. 25. As Vandor Corporation, the patent owner, correctly pointed out to the Board, "deceased," in its noun form, universally refers to a human. J.A. 667 & n. 2; *see, e.g.*, *Deceased*, MERRIAM-WEBSTER, merriam-webster.com/dictionary/deceased (defining the noun form of "deceased" as "a dead person"). Nothing in the written description or figures suggests a broader understanding of its usage of "deceased." Indeed, they all contemplate a casket configured for a dead person. *See* '151 Patent col. 5 ll. 10–12 (referring to the "head" and "feet" "of the deceased"), figs. 3, 9. Although the Board relied on prior art pet caskets to broaden the meaning of "deceased," those references do not show that the term "deceased," standing alone, means anything other than a dead human; nor do these specialty "pet caskets" undermine the understanding of "casket" in the '151 Patent. *See* U.S. Patent Nos. 3,997,948; D253,975; D292,839. The Board in an IPR typically uses the "broadest reasonable construction" of the claim, *see Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016), but given the plain meaning of "deceased" and the context of the '151 Patent specification, the Board's construction of deceased was unreasonably broad. We thus construe "deceased" in the '151 Patent, as the Board did in its institution decision, as "a dead human."

As the party bearing the burden of proof, Matthews had to present a case for why Groh's ice chest or Watson's frozen dough container disclosed "an arrangement capable

could include cremated remains in addition to corporeal remains. That issue is thus not before us.

of receiving or containing the remains of a deceased." Matthews's petition for inter partes review contained no discussion about whether the prior art structures were capable of containing a deceased; it instead argued that "casket body" carried no patentable weight. And in its petitioner's reply, Matthews made only the single statement, without anything more, that "it is clear that human infants can fit into an 'ice chest' sized container." J.A. 381. The Board found that this "unsupported argument is not persuasive." J.A. 31. We agree, given that this sentence in Matthews's reply does not even attempt to refer to anything in the Groh or Watson disclosures, let alone present their teachings in a meaningful way to meet the casket body limitation. The claims at issue here may well be unpatentable as obvious in light of prior art disclosing cardboard caskets and disclosing the folding of cardboard boxes in the manner described by the patent. But in an inter partes review proceeding, the petitioner bears the burden of proving that issued patent claims are unpatentable by a preponderance of the evidence. *See* 35 U.S.C. § 316(e). With respect to claim 1, Matthews only argued anticipation. We agree with the Board that Matthews's single conclusory sentence to address the issue of whether a deceased could be contained in the prior art structures failed to meet that burden of proof.

CONCLUSION

We have considered all of Matthews's other arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's claim construction of "casket body," except to the extent to which the Board construed "deceased" in its construction to include bodies other than human. We *affirm* the Board's determination that Matthews failed to prove by a preponderance of the evidence that the challenged claims of the '151 Patent are unpatentable.

**AFFIRMED**